FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
## APPELLATE DIVISION

| | |
|---|---|
| GOVERNMENT OF THE VIRGIN ISLANDS )<br><br>*Appellant*, )<br>)<br>v. )<br>)<br>GREGORY WILLIAMS and )<br>CLEMENT CONNOR )<br>)<br>*Appellees*. )<br>_____ ) | D.C. Crim. App. No. 2004-130<br><br>Super. Ct. Crim. No. F97/04 |

On Appeal from the Superior Court of the Virgin Islands

### Considered: February 29, 2008
### Filed: May 19, 2008

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the
Virgin Islands; and **JULIO A. BRADY**, Judge of the Superior Court,
Division of St. Croix, sitting by designation.

ATTORNEYS:

**Maureen Phelan, AAG**
St. Thomas, U.S.V.I.
        *For the Appellant.*

**Andrew L. Capdeville, Esq.**
St. Thomas, U.S.V.I.
        *For Appellee Gregory Williams.*

**Leonard Bernard Francis, Esq.**
St. Thomas, U.S.V.I.
        *For Appellee Clement Connor.*

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 2

---

## MEMORANDUM OPINION

**PER CURIAM,**

Appellant Government of the Virgin Islands (the

"Government") appeals a June 17, 2004, order of the Superior

Court of the Virgin Islands suppressing statements of the victim

in a criminal proceeding.  For the reasons stated below, the

Court will vacate the order of the Superior Court and remand this

matter.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2002, Appellees Gregory Williams

("Williams") and Clement Connor ("Connor") (collectively referred

to as the "Appellees") rented a room at the Windward Passage

Holiday Inn Hotel on St. Thomas, U.S. Virgin Islands.  Later that

day, the Appellees and another male individual exited the hotel

and sat on the ledge of a glass window abutting the hotel lobby.

The Appellees and the other individual began surveilling a young

man sitting at a nearby bus stop.  One of the men entered a red

automobile while the other two blindfolded the young man at the

bus stop and dragged him toward the car.  The two men put the

young man in the automobile and entered the automobile

themselves.  The automobile subsequently sped away.

Later that day, Officer Albion George ("Officer George") of

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 3

the Virgin Islands Police Department responded to calls about a
kidnapping in the vicinity of an area known as Windward Passage.
George also received calls that a red vehicle had been observed
heading toward an area known as Agnes Fancy.  On arrival at Agnes
Fancy, George found other police officers on the premises.  The
officers found an individual named Travis Poleon ("Poleon")
conscious and lying face down with a gunshot wound.  Poleon made
certain statements to the officers before an ambulance arrived
for him.  Poleon later died from his wounds.

    The Government charged the Appellees with offenses arising
out of the kidnapping and shooting.  The Government thereafter
filed with the trial court a pleading styled as a "Notice of
Intent to Proffer the Statement of Victim Travis Poleon Pursuant
to Federal Rules of Evidence 803(1), 803(2) and 804(b)(2)."  The
trial court treated the Government's notice as a motion to admit
Poleon's statements to police officers.  On March 3, 2004, the
trial court issued an order, finding that Poleon's statements did
not qualify as either a present sense impression under Rule
803(1) or a dying declaration under Rule 804(b)(2) of the Federal
Rules of Evidence.  The trial judge did, however, find that the
statements were admissible as an excited utterance under Rule
803(2).

    Following the trial court's ruling on the admissibility of

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 4

Poleon's statements, the Government dismissed the case against
the Appellees.[1]  The Government thereafter filed a new
information against the Appellees, alleging various murder,
kidnapping, and firearms-related offenses arising from the same
events that gave rise to the first proceeding.  The Government
again sought to introduce Poleon's statements.  The Appellees
filed a motion to suppress those statements.  The trial court --
this time with a different judge presiding over the matter --
held a hearing on June 17, 2004.

At the hearing, Officer Michael Turnbull ("Officer
Turnbull") testified that when another policeman, Officer
Guishard ("Officer Guishard"), approached Poleon where he was
found lying face down, Poleon's first words were, "What took all
you so long?" [Appellant's App'x. at 126.]  Officer Guishard
asked Poleon what happened, and Poleon said he had been shot.
[*Id.*]  Officer Guishard then asked Poleon who had shot him.
According to Officer Turnbull,[2] Poleon responded, "give me some
water because I feel like I going die [sic]." [*Id.*]  Officer

_____

[1]  The record is unclear regarding the precise circumstances
of the dismissal of the case.  The record reflects only that the
case "was dismissed without prejudice." [Appellants' App'x at
67.]

[2]  Officer Turnbull's report about the events giving rise to
the charges in this matter was filed one and a half years after
the events. [Appellant's App'x. at 123.]

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 5

Turnbull further testified that after drinking the water, Poleon appeared to be feeling better. [*Id.* at 120, 129.] Officer Guishard again asked Poleon who had shot him. Poleon responded "Marv." [*Id.* at 120, 126.]

The trial court also heard testimony from Officer George. Officer George testified that Poleon, covered in blood, said he had trouble breathing. Officer George stated, "He spoke as if he had severe pain and he was constantly groaning stating that he cannot speak. He can't breathe well." [*Id.* at 101.] Officer George asked Poleon who had shot him. Poleon responded, "Marv." [*Id.* at 102.] George gave the following reason for asking Poleon that question:

> I saw his condition and from my experience I saw the
> desperation. I saw the wound that he had, the blood --
> the color of the blood. . . . His eyes was like
> rolling. He was in severe pain and I figured that he
> needed some immediate help.

[*Id.*] George also indicated that he thought that Poleon was possibly going to die.

After the hearing, the trial court issued a ruling on the admissibility of Poleon's statements. The trial court determined that those statements were testimonial, as contemplated by the Supreme Court's decision in *Crawford v. Washington*, and thus were

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 6

inadmissible as an excited utterance.[3]  The trial court also held

that the statements were inadmissible as a dying declaration

under Rule 804(b)(2) of the Federal Rules of Evidence.

Specifically, the trial court found no evidence that Poleon was

under the belief that his death was imminent, as required by that

rule.  Consequently, the trial court denied the Government's

motion to proffer Poleon's statements and ordered that Poleon's

statements be suppressed.[4]

The Government now appeals the trial court's ruling in the

second proceeding against the Appellees.  The criminal proceeding

before the trial court has been stayed pending this appeal.  In

its appeal, the Government argues that Poleon's statements (1)

are admissible under the doctrine of forfeiture by wrongdoing;

(2) are nontestimonial; (3) are admissible as a dying

declaration; and (4) are admissible as an excited utterance.

## II.  <u>DISCUSSION</u>

### A.  Jurisdiction

The Revised Organic Act gives this Court "appellate

---

[3]  The Supreme Court's decision in *Crawford v. Washington*,
541 U.S. 36 (2004), was issued on March 8, 2004, five days after
the hearing on the admissibility of Poleon's statements in the
first proceeding and the order of the trial court finding that
Poleon's statements were admissible as an excited utterance.

[4]  The trial court's ruling did not address the
admissibility of Poleon's statements under any other hearsay
exception.

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 7

jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law." 48 U.S.C. § 1613a; *see also* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed V.I. CODE ANN. tit. 4, §§ 33-40, and reinstating appellate jurisdiction in this Court); Revised Organic Act of 1954 § 23A. Local law provides that the Government of the Virgin Islands may appeal an order suppressing evidence in a criminal proceeding when "not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." V.I. CODE ANN. tit. 4, § 33(d)(2). In the Government's notice of appeal, the Attorney General made such a certification to the Superior Court.

**B.    Standard of Review**

A trial court's ruling on a motion to suppress is a mixed question of fact and law. *See, e.g.*, *United States v. Guevara-Martinez*, 262 F.3d 751, 753 (8th Cir. 2001) ("When a district court grants a motion to suppress evidence, we review its findings of fact for clear error, and its conclusions of law de novo."). The Court reviews the trial court's factual

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 8

determinations for clear error. *See In re Cendant Corp. Prides*

*Litig.*, 233 F.3d 188, 193 (3d Cir. 2000); *Soto v. Gov't of the*

*V.I.*, 344 F. Supp. 2d 450 (D.V.I. App. Div. 2004).  The Court may

reverse a factual finding based on "clear error" only where "that

determination either (1) is completely devoid of minimum

evidentiary support displaying some hue of credibility, or (2)

bears no rational relationship to the supportive evidentiary

data" or where the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been

committed. *Georges v. Gov't of Virgin Islands*, 119 F. Supp. 2d

514, 520 (D.V.I. App. Div. 2000).  However, the trial court's

application of the law is reviewed *de novo*. *See Soto*, 344 F.

Supp. 2d at 453.  Finally, to the extent the Court's review of

the trial court's determination of admissibility implicates its

interpretation of the Federal Rules of Evidence, the Court's

review is plenary, but where the trial court's ruling was "based

on a permissible interpretation of a rule," the Court reviews

only for an abuse of discretion. *United States v. Peppers*, 302

F.3d 120, 137 (3d Cir. 2002); *United States v. Console*, 13 F.3d

641, 656 (3d Cir. 1993).

### III.  **ANALYSIS**

Before addressing the Government's assertions that Poleon's

statements are admissible under the forfeiture by wrongdoing,

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 9

dying declaration or excited utterance hearsay exceptions, the

Court must first determine whether Poleon's statements are

testimonial or nontestimonial, as contemplated by *Crawford*.

"'Hearsay' is a statement, other than one made by the

declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." FED. R. EVID.

801(c). "Hearsay is generally inadmissible because the statement

is inherently untrustworthy: the declarant may not have been

under oath at the time of the statement, his or her credibility

cannot be evaluated at trial, and he or she cannot be

cross-examined." *United States v. Reilly*, 33 F.3d 1396, 1409 (3d

Cir. 1994) (quotation omitted).

"In *Crawford v. Washington*, the Supreme Court interpreted

the Confrontation Clause of the Sixth Amendment as barring the

'admission of testimonial statements of a witness who did not

appear at trial unless he was available to testify, and the

defendant had a prior opportunity for cross-examination.'" *United*

*States v. Cannon*, 220 Fed. Appx. 104, 109 (3d Cir. 2007) (quoting

541 U.S. 36, 53-54 (2004)). "[T]his outcome obtains regardless

of whether the statement at issue falls within a firmly rooted

hearsay exception or has a particularized guarantee of

trustworthiness." *United States v. Hendricks*, 395 F.3d 173, 178-

79 (3d Cir. 2005) (citation omitted). "In sum, insofar as

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 10

'testimonial' evidence is concerned, *Crawford* replaced the

malleable judicial inquiry . . . with a virtually *per se* rule of

exclusion." *Id.* at 179 (citing *United States v. Saget*, 377 F.3d

223, 226-27 (2d Cir. 2004) ("It is clear that a court faced with

an out-of-court testimonial statement need not perform the

*Roberts* reliability analysis, as *Crawford* replaces that analysis

with a bright-line rule drawn from the historical origins of the

Confrontation Clause.")).

The Supreme Court subsequently explained the meaning of

"testimonial" in the context of statements made to the police:

> Statements are nontestimonial when made in the course
> of police interrogation under circumstances objectively
> indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an
> ongoing emergency.  They are testimonial when the
> circumstances objectively indicate that there is no
> such ongoing emergency, and that the primary purpose of
> the interrogation is to establish or prove past events
> potentially relevant to later criminal prosecution.

*Davis v. Washington*, 126 S. Ct. 2266, 2273-74 (2006).  The Third

Circuit has expounded on the Supreme Court's explanations in

*Davis*:

> [T]estimonial statements describe *in hindsight* how past
> events began and progressed.  Such statements are akin
> to live, in-court statements made by a witness on
> direct examination.  In contrast, nontestimonial
> statements describe events that are presently unfolding
> and alert police to a dangerous situation that requires
> resolution.  They can manifest themselves as cries for
> help or descriptions of present circumstances requiring
> police assistance.

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 11

*Cannon*, 220 Fed. Appx. at 109 (emphasis in original) (internal citations omitted).

The *Crawford* Court referenced three "formulations of . . . 'testimonial' statements": (1) "*ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Hinton*, 423 F.3d 355, 359 (3d Cir. 2005) (internal citations omitted).

In *Davis v. Washington*, the Supreme Court held that a declarant's statements are testimonial if they relate to a past criminal occurrence relevant to a later criminal prosecution where there is no imminent threat of danger to the declarant. *See Davis*, 126 S. Ct. at 2273. However, the *Davis* Court also

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 12

specifically declined to set forth any bright-line rule for

determining whether initial inquiries at the scene of a crime

necessarily elicit testimonial or nontestimonial statements. *Id.*

at 2279 ("Although we necessarily reject the . . . implication

that virtually any 'initial inquiries' at the crime scene will

not be testimonial, we do not hold the opposite--that no

questions at the scene will yield nontestimonial answers.")

(citations omitted).

In this matter, the trial court concluded that Poleon's

statements were testimonial.  During the hearing on the motion to

suppress, the trial court noted:

> I find and I have concluded that this was an
> interrogation.  I do not agree with the government that
> you have to be in custody, and the custodial
> interrogation, these statements were made in response
> to police questions and the Court finds that there were
> police interrogations and the Court finds that these
> statements are in fact testimonial accounts and
> therefore *Crawford* attaches . . . .

[Appellants' App'x at 88.]

This Court cannot agree that Poleon's statements were

testimonial because those statements do not fall within any of

the three formulations of testimonial statements set forth by the

*Crawford* Court.  The first two formulations are obviously

inapplicable in this case -- Poleon's statements are in no way

the functional equivalent of in-court testimony or statements

contained in formalized testimonial materials.  Thus, only the

third formulation is potentially applicable.  For the reasons given below, the Court does not find that Poleon's statements fall within that broad formulation, either.

Although the *Davis* Court refined the definition of what constitutes a "testimonial" statement, "the line between testimonial and nontestimonial statements will not always be clear," and "each victim statement thus must be assessed on its own terms and in its own context to determine on which side of the line it falls." *Lewis v. United States*, No. 02-1355, 2007 D.C. App. LEXIS 702, at *15 (D.C. Dec. 31, 2007) (quoting *United States v. Arnold*, 486 F.3d 177, 189 (6th Cir. 2007) (en banc), *cert. denied*, No. 07-5989, 2008 U.S. LEXIS 335 (Jan. 7, 2008)). Despite the lack of a clear definition of "testimonial" versus "nontestimonial" statements, an examination of *Davis* and its companion case offers guidance.

In *Davis*, someone placed a call to a 911 operator.  The connection was lost before anything was said.  The 911 operator traced the number, called back and began asking several questions of the person who answered the call.  The caller, Michelle McCottry, stated that she was being attacked by an ex-boyfriend, Adrian Davis.  The police arrived and arrested Davis.  At trial, the government called the police officers who responded to the 911 call.  McCottry did not testify.  On the government's motion,

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 14

the trial court admitted a portion of McCottry's 911 call.  Davis
was found guilty of a domestic violence-related offense.

The Supreme Court affirmed Davis's conviction.  The Court
found that McCottry's statements during the 911 call were not
"testimonial" and thus posed no Confrontation Clause problem.
*Davis*, 126 S. Ct. at 2276-77.  Specifically, the Court found that
"[a] 911 call . . . and at least the initial interrogation
conducted in connection with a 911 call, is ordinarily not
designed primarily to establish or prove some past fact, but to
describe current circumstances requiring police assistance." *Id.*
at 2276.

The Court distinguished the facts in *Davis* from those in
*Crawford*.  First, McCottry "was speaking about events as they
were actually happening, rather than 'describ[ing] past events'".
*Id.*  Second, the emergency in *Davis* was ongoing and was "plainly
a call for help against a bona fide physical threat." *Id.*  Third,
"the nature of what was asked and answered in Davis, again viewed
objectively, was such that the elicited statements were necessary
to be able to *resolve* the present emergency, rather than simply
to learn (as in *Crawford*) what had happened in the past." *Id.*
(emphasis in original).  Finally, remarking on "the difference in
the level of formality," the Court noted that the declarant in
*Crawford* was calm and in a safe environment, where as McCottry

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 15

was giving "frantic answers . . . in an environment that was not
tranquil, or even . . . safe. *Id.* at 2277.

*Davis*'s companion case, *Hammon v. Indiana*, No. 05-5705, also
involved a domestic disturbance.  In *Hammon*, however, police
obtained the declarant's statements at the scene rather than by
telephone.  On arrival at the scene, police officers found the
victim, Amy Hammon, on the porch of her home.  She appeared
"somewhat frightened," but said that "nothing was the matter."
*Id.* at 2272.  The police then entered the home and found Amy's
husband, Hershel Hammon, in the kitchen.  One of the officers
stayed with Hershel while a second officer went to the living
room to interview Amy.  That second officer had Amy "fill out and
sign a battery affidavit." *Id.*  Amy later failed to appear as a
witness.  At trial, over defense counsel's objection, the trial
court allowed the government to submit the affidavit into
evidence.  The trial judge found Hershel guilty of battery.

The Supreme Court reversed Hershel's conviction on the
ground that Amy's statements were testimonial.  The Court
reasoned that "[t]here was no emergency in progress"; "Amy told
them that things were fine"; and "there was no immediate threat
to [Amy's] person." *Id.* at 2278.  The Court further noted that in
interviewing Amy, the police officer

> was not seeking to determine (as in *Davis*) "what is
> happening," but rather "what happened."  Objectively

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 16

> viewed, the primary, if not indeed the sole, purpose of
> the interrogation was to investigate a possible
> crime--which is, of course, precisely what the officer
> should have done.  Such statements under official
> interrogation are an obvious substitute for live
> testimony, because they do precisely *what a witness
> does* on direct examination; they are inherently
> testimonial.

*Id.* (emphasis in original).

In applying the Supreme Court's guidance in those cases to
the facts in this matter, the Court finds the Sixth Circuit's
decision in *United States v. Arnold* instructive.  In *Arnold*, the
victim, Tamica Gordon, called 911 after her mother's boyfriend,
Joseph Arnold, had pulled a gun on her.  Gordon explained to the
operator that she had left the premises in her car and was
calling from around the corner.  Police officers were thereafter
dispatched to the address Gordon had provided.  Gordon went back
to the premises and "approached the officers, 'crying,'
'hysterical,' 'visibly shaken and upset,' and exclaimed that
Arnold had pulled a gun on her and was trying to kill her."
*Arnold*, 486 F.3d at 180.  Gordon then identified Arnold to the
officers and described the gun he had pulled on her.  The trial
court allowed Gordon's 911 call and subsequent statements to be
admitted under the excited utterance exception.  Arnold was
convicted of being a felon in possession of a firearm.

In affirming Arnold's conviction, the Sixth Circuit
explained that "it may often be the case that on-the-scene

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 17

statements in response to officers' questions will be testimonial

because the presence of the officers will alleviate the emergency

. . . ." 486 F.3d at 190.  The *Arnold* Court continued to explain

that the facts of that case did not fall within that general rule

for several reasons.  For example, the court noted that the

defendant

> remained at large; he did not know that [the victim]
> had called 911; and for all [the victim] (or the
> officers) knew [the defendant] remained armed and in
> the residence immediately in front of them or at least
> in the nearby vicinity.

*Id.*  In agreeing with the trial court that Gordon's statements

could be admitted an excited utterance, the Sixth Circuit

concluded that Gordon's statements were nontestimonial, reasoning

that officers described "distress" in the Gordon's voice and

attempted to calm her down.  *Id.*  These facts, the court reasoned,

> suggested that the engagement had not reached the stage
> of a retrospective inquiry into an emergency gone by.
> No reasonable officer could arrive at a scene while the
> victim was still "screaming" and "crying" about a
> recent threat to her life by an individual who had a
> gun and who was likely still in the vicinity without
> perceiving that an emergency still existed.  And
> nothing that [the victim] told them, and certainly
> nothing about the way she told it to them, would have
> allayed concerns of a continuing threat to [the victim]
> and the public safety, to say nothing of officer
> safety.

*Id.*

The facts of the case before this Court are akin to those in

*Hammon*.  The testimony of the proceeding before the trial court

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 18

shows that the police were facing "an ongoing emergency." *See*

*Davis*, 126 S. Ct. at 2273. Officer George testified that he was

responding to radio calls of a recent kidnapping, and that when

he found the automobile that had allegedly been used to abduct

Poleon, "[t]he hood was warm." [Appellant's App'x at 99.] That

the emergency was ongoing is further evidenced by the fact that

the police found Poleon "lying . . . face down" and "in desperate

need of help," and observed that "he had difficulty in breathing

. . . ." [*Id.* at 101.] *See, e.g., Martin v. Michael*, Civ. No.

06-1383, 2007 U.S. Dist. LEXIS 38069, at *9 (W.D. La. Mar. 29,

2007) (finding statements nontestimonial where the victim "was

having trouble breathing and was in considerable distress").

Moreover, Poleon "spoke as if he had severe pain and he was

constantly groaning stating that he cannot speak." [Appellant's

App'x at 101.] Finally, Poleon's "hands were all bloody and full

of dirt." [*Id.*] Under these circumstances, any reasonable

observer would have concluded that Poleon and the police were

facing an ongoing emergency. *See, e.g., Arnold*, 486 F.3d at 190;

*United States v. Clemmons*, 461 F.3d 1057, 1060 (8th Cir. 2006)

(holding that police were facing an ongoing emergency when they

questioned the victim after finding him "lying in front of a

neighbor's house, suffering from multiple gunshot wounds");

*Lewis*, 2007 D.C. App. LEXIS 702, at *24 (finding statements

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 19

nontestimonial where police found the declarant "crying" and

"agitated" and where "the situation was uncertain and confused");

*People v. Bradley*, 862 N.E.2d 79, 81 (N.Y. 2006) (observing that,

upon encountering a victim "emotionally upset" and "smeared with

blood," the officer's "first concern could only be for her

safety").

Furthermore, Poleon's statements to police officers "were

not made in the context of a structured, formal investigation

intended 'to establish or prove past events potentially relevant

to later criminal prosecution.'" *See, e.g.*, *Long v. United

States*, No. 03-10, 2007 D.C. App. LEXIS 667, at *24 (D.C. Nov.

15, 2007) (quoting *Davis*, 126 S. Ct. at 2274).  The police

officers first asked Poleon his name, and then asked who had shot

him.  In light of the fact that the automobile was found in close

proximity to Poleon and was still warm, it seems that those

questions were not part of a formal investigation, but rather

were intended "to find out what had caused the injuries so that

[the officers] could decide what, if any, action was necessary to

prevent further harm." *See, e.g.*, *Bradley*, 862 N.E.2d at 81

("Asking [the victim] 'what happened' was a normal and

appropriate way to begin . . . ."); *see also Long*, 2007 D.C. App.

LEXIS 667, at *25 ("Although any experienced police officer is

undoubtedly aware of the possibility that any information he

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 20

gleans may ultimately become evidence, building a prosecution is
not the motivation for preliminary questions that are asked in
response to an emergency situation.").  "Viewed objectively, [the
officers'] questions were designed to find out whether there was
any continuing danger and to respond to the situation with which
he was confronted." *See, e.g., Long*, 2007 D.C. App. LEXIS 667, at
*25; *Head v. State*, 912 A.2d 1, 12 (Md. Ct. Spec. App. 2006)
(finding that a police officer's question, "Who shot you?" was
not intended "to establish or prove past events for possible use
at trial"); *State v. Warsame*, 735 N.W.2d 684, 693 (Minn. 2007)
("In order to [determine the extent of a party's injuries],
officers must inevitably learn the circumstances by which the
party was injured, and if the circumstances of the questions and
answers objectively indicated that gaining such information is
the primary purpose of the interrogation, then the party's
statements are non-testimonial").[5]

---

[5]  The Second and Ninth Circuits also have suggested,
although only in dicta, that statements made by a victim to the
police in the immediate aftermath of an emergency situation would
not qualify as "testimonial" under *Crawford. See Mungo v. Duncan*,
393 F.3d 327, 336 n.9 (2d Cir. 2004) (doubting that responses
"delivered in emergency circumstances to help the police nab [the
victim's] assailants . . . were the type of declarations the
[Supreme] Court would regard as testimonial"), *cert. denied*, 544
U.S. 1002 (2005); *Leavitt v. Arave*, 383 F.3d 809, 830 n.22 (9th
Cir. 2004), *cert. denied*, 545 U.S. 1105 (2005).  Similarly, the
First Circuit has reasoned that "ordinarily, statements made to
the police while the declarant or others are still in personal
danger cannot be said to have been made with consideration of

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 21

In a similar vein, the record demonstrates that the police officers questioned Poleon at the scene of a very recent crime while he was prostrate in a bushy area.  The Court fails to see how that description falls within the normal definition of a custodial setting. *See, e.g., People v. King*, 121 P.3d 234, 240 (Colo. Ct. App. 2005) (holding that where the statements were made to police in a noncustodial setting, without indicia of formality, and while the victim was under considerable pain and distress, the statements could not be viewed by any reasonable person as being made with the expectation that they would be used prosecutorially and thus were nontestimonial), *cert. denied*, No. 05SC179, 2005 Colo. LEXIS 941 (Colo. Oct. 17, 2005).  Indeed, aside from Poleon's comment to police -- "what took you so long" [Appellant's App'x at 126] -- there is only scant evidence in the record that "[a]n 'objective witness' reasonably would have believed that [Poleon's answer, "Marv,"] served the purpose of incriminating [the Appellees] and would be available for use at trial." *Cf. United States v. Hinton*, 423 F.3d 355, 361 (3d Cir.

---

their legal ramifications," and are thus nontestimonial. *See United States v. Brito*, 427 F.3d 53, 62 (1st Cir. 2005). Moreover, "a number of state courts have considered whether statements made to the police during 911 calls or immediately upon their arrival at the scene of an ongoing or recent crime or emergency were testimonial, with most concluding that they were not." *United States v. Hadley*, 431 F.3d 484, 505 (8th Cir. 2005) (compiling cases).

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 22

2005) (finding statements testimonial where the victim identified

his assailant while riding with the police in their cruiser);

*Lopez v. State*, 888 So. 2d 693, 700 (Fl. Dist. Ct. App. 2004)

(holding that an accusation made by the victim to police at the

scene of the crime was testimonial because the declarant "surely

must have expected that the statement he made to [the officer]

might be used in court against the defendant. He knew [the

officer] was a policeman who was on the scene in an official

capacity to investigate a reported crime"), *cited with approval*

*in Hinton*, 423 F.3d at 361 n.2.

Like the victim in *Arnold*, Poleon was evidently in distress

-- the recent victim of a shooting and possibly of forcible

abduction. The record does not reflect that either he or the

police knew of the perpetrators' whereabouts. Indeed, any

reasonable observer would have concluded, as in *Arnold*, that

safety was on the mind of both Poleon and the police officers,

and that nothing that Poleon told the officers, "and certainly

nothing about the way [he] told it to them, would have allayed

concerns of a continuing threat." *Arnold*, 486 F.3d at 190.

In sum, Poleon's statements to police officers were made

during an ongoing emergency. The police officers took those

statements while responding to that emergency. Finally, Poleon's

statements were "not the solemn and formal statements that one

*Gov't of the Virgin Islands v. Williams, et al.*
D.C. Crim. App. No. 2004-130
Memorandum Opinion
Page 23

typically associates with testimony." *See, e.g., Long*, 2007 D.C.

App. LEXIS 667, at *28.  For these reasons, the Court finds that

those statements were not "testimonial," and therefore do not

trigger the protections of the Confrontation Clause.

## IV.   **CONCLUSION**

For the reasons stated above, the Court finds that the trial

judge erred by finding that Poleon's statements were testimonial.

Accordingly, the Court will remand this matter to the Superior

Court for a determination whether Poleon's statements are

admissible under any hearsay exception.  An appropriate judgment

follows.